**In re: PROFESSIONAL VIDEO ASSOCIATION, INC.,**
**Debtor**

**Michael J. Horan, Appellant**

v.

**William Danton;  Professional Video Associates, Inc.;  Video Lottery Consultants, Inc.**

**No. 09–1620.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 15, 2009.

Filed:  Dec. 22, 2009.

Before: FISHER, HARDIMAN and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Michael J. Horan ("Horan") appeals from an order of the District Court affirming an order of the Bankruptcy Court holding that Professional Video Association, Inc. ("PVA"), William Danton ("Danton"), and Video Lottery Consultants, Inc. ("VLC") did not breach a settlement agreement by failing to turn over the rights to a software product to Horan. For the reasons stated herein, we will affirm.

### I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

This case comes before our Court for the second time in the course of litigation spanning ten years. Horan invented a computer software program known as Elimination Draw Poker in the early 1980s. In April 1985, Horan assigned the patent, copyright, rules, design, format, system, and related hardware for Elimination Draw Poker to PVA. Ten years later,

on January 6, 1995, PVA filed a Chapter 11 voluntary petition for bankruptcy. To resolve ownership disputes surrounding PVA, the parties to this appeal, Horan, PVA, Danton,[1] and VLC,[2] executed a Settlement Agreement that provides as follows:

> "PVA, with the joinder of Danton, hereby grants and conveys to Horan, all exclusive distribution and all other related rights in and to the Software Assets, including any and all upgrades, updates, modifications, the name and/or new versions in [10] exclusive locations, which rights includes [sic] the exclusive right to sell, advertise, distribute, demonstrate, manufacture and duplicate the Software Assets."

(JA at 164.)[3] The Bankruptcy Court approved the Agreement on March 4, 1997.

In December 1999, Don Pierce produced a nearly identical software program ("Pierce Product") by looking at Elimination Draw Poker, but not by copying its source code (JA at 242, 244), for PVA's successor in interest, Fortune Entertainment Corporation ("FEC"). A third-party governmental regulatory body determined that the Pierce Product was not operable, but Pierce testified that the software was "99.9 percent complete" and just needed to be "hook[ed] . . . up" to the proper hardware. (JA at 242, 247.)

On April 17, 1998, Horan commenced an adversary proceeding against PVA, Danton, and VLC for failing to turn over the rights to the Pierce Product. Horan argued that the Pierce Product constituted an upgrade, update, modification, or new version of the Software Assets pursuant to the Settlement Agreement. The Bankruptcy Court entered judgment in favor of the defendants, and the District Court affirmed. On appeal, we vacated the portion of the District Court's opinion that held that the Pierce Product was not a "new version" of the Software Assets because it was not operational. *In re Prof'l Video Ass'n Inc.,* —— Fed.Appx. ——, 2006 WL 859042, at *3 (3d Cir. Apr. 3, 2006) (unpublished disposition). We explained that it was unclear

> "whether something that is 'inoperable' counts as an upgrade, update, modification, or new version if it is 99.9 percent complete and just needs to be 'hook[ed] . . . up.'"

*Id.* We directed the Bankruptcy and District Courts to examine on remand "the [Pierce Product's] effectiveness" as well as "its value to PVA, FEC, and Horan." *Id.*

On remand, the Bankruptcy Court determined that the Settlement Agreement only gives Horan distribution rights and that a product that is 99.9 percent complete is not an upgrade, update, modification, or new version of the Software Assets. Accordingly, the Court concluded that the defendants did not breach the Settlement Agreement by failing to turn over the Pierce Product rights to Horan. The District Court affirmed, and Horan filed a timely notice of appeal.

## II.

The District Court had jurisdiction over the appeal from the Bankruptcy Court under 28 U.S.C. § 158(a)(1), and we have jurisdiction pursuant to 28 U.S.C. § 158(d)(1) and 28 U.S.C. § 1291. We apply the same standard as the District Court in reviewing the Bankruptcy Court's decision. *Fellheimer, Eichen & Braver-*

---

1. Horan and Danton had a business relationship that involved PVA.

2. VLC was owned by Danton.

3. The Settlement Agreement defines "Software Assets" as " 'Elimination Draw Poker' together with the Patent, related copyrights, rules, design, format, system and related hardware." (JA 163.)

*man, P.C. v. Charter Techs., Inc.,* 57 F.3d 1215, 1223 (3d Cir.1995). We therefore review the Bankruptcy Court's factual determinations under a clearly erroneous standard and exercise plenary review over its conclusions of law. *Mellon Bank, N.A. v. Metro Commc'ns, Inc.,* 945 F.2d 635, 641 (3d Cir.1991).

## III.

Horan asserts two related arguments on appeal. First, Horan challenges the Bankruptcy Court's finding that the Settlement Agreement is solely a distribution agreement and argues that he had the right under the Agreement to make the Pierce Product operable. Second, Horan contends that the Bankruptcy Court erred in holding that the Pierce Product is not an upgrade, update, modification, or new version of the Software Assets under the Settlement Agreement. We will address each argument in turn.

### A.

■ The Bankruptcy Court determined that the Settlement Agreement only entitles Horan to distribution rights. (JA 22.) Horan, however, argues that the Agreement is not a mere distribution agreement because it grants him "all exclusive distribution and *all other related rights* in and to the Software Assets." (JA 164 (emphasis added).) Therefore, according to Horan, he should have been allowed to make the Pierce Product operable under the Settlement Agreement.

The clear, unambiguous language of the Settlement Agreement supports the Bankruptcy Court's interpretation. The Agree-

ment expressly defines the distribution and related rights as including "the exclusive right to sell, advertise, distribute, demonstrate, manufacture and duplicate the Software Assets." (JA 164.) Contrary to Horan's assertion, these rights are all actions that are taken with a finished product. The Agreement does not give Horan the right to improve or change nearly completed Software Assets to make them operable. Therefore, the Bankruptcy Court correctly concluded that the Pierce Product was "of no value or use" to Horan. (JA at 25.)

In summary, we agree with both the Bankruptcy and District Courts that the Settlement Agreement is solely a distribution agreement and thus that Horan did not have the right to make the Pierce Product operable.

### B.

■ Horan also challenges the Bankruptcy Court's conclusion that a product that is "99.9 percent complete" is not an upgrade, update, modification, or new version of Elimination Draw Poker under the Settlement Agreement.[4] (JA at 21, 23–24.) More specifically, Horan argues that, despite the Pierce Product's inability to run on FEC's specific gaming hardware, the Pierce Product software was operational on computers and thus qualifies as an upgrade, update, modification, or new version under the Settlement Agreement.

The Bankruptcy Court based its contrary conclusion on the common definitions of "upgrade," "update," "modification," and "new version."[5] (JA at 23–24.) Its analy-

---

**4.** Although it is somewhat unclear in the briefs, Horan concedes that the issue is not whether the Pierce Product can be classified as operational. (Horan Reply Br. at 5.) Rather, the question, in our view, is whether the Pierce Product counts as an upgrade, update, modification, or new version of the Software

Assets—namely, of Elimination Draw Poker—under the Settlement Agreement.

**5.** The parties stipulated at oral argument before the Bankruptcy Court that these terms are not terms of art within the software or gaming industries. (JA 21.)

sis is sound. The Pierce Product cannot be an "upgrade" or "update" of Elimination Draw Poker because, being incomplete, it neither "improves" Elimination Draw Poker nor brings it "up to date" by incorporating new information. Likewise, the Pierce Product is not a "modification" or "new version"—a "change" or "special form"—of Elimination Draw Poker because Pierce did not use the Elimination Draw Poker source code to develop it. In short, the fact that the Pierce Product mirrors the essential nature of Elimination Draw Poker is not in and of itself sufficient to make the Pierce Product an upgrade, update, modification, or new version under the Settlement Agreement.

Therefore, seeing no error in the Bankruptcy Court's factual determinations or legal conclusions, we agree that Horan did not have rights to the Pierce Product under the Settlement Agreement.

## IV.

For the foregoing reasons, we will affirm the order of the District Court.